Form 240A - Reaffirmation Agreement (1/07)

___ **Presumption of Undue Hardship**
___ **No Presumption of Undue Hardship** (Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Arkansas**

In re <u>Curtis And Martha Green</u>,
Debtor

Case No. <u>09-14713</u>
Chapter 7

# REAFFIRMATION AGREEMENT

[Indicate all documents included in this filing by checking each applicable box.]

☒Part A: Disclosures, Instructions, and Notice to Debtor (Pages 1 – 5)

☒Part B: Reaffirmation Agreement

☒Part C: Certification by Debtor's Attorney

☒Part D: Debtor's Statement in Support of Reaffirmation Agreement

☐Part E: Motion for Court Approval

[Note: Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. **Note also**: If you complete Part E, you must prepare and file Form 240B - Order on Reaffirmation Agreement.]

**Name of Creditor**: <u>Vanderbilt Mortgage and Finance, Inc.</u>

[Check this box if] Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

**PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR**

**1.    DISCLOSURE STATEMENT**

**Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:**

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm:          $47,321.04

**The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.**

2

## **ANNUAL PERCENTAGE RATE**

[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]

    a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

--- And/Or ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.

    b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: <u>11.65</u>%.

--- And/Or ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

3

$_____ @ _____%;

$_____ @ _____%;

$_____ @ _____%.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Mobile Home | $48,591.00 |

<u>Optional</u>---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:

**Repayment Schedule:**

    Your first payment in the amount of $<u>581.55</u> is due on <u>08/01/09</u>(date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— Or —

    Your payment schedule will be: \_\_\_\_\_(number) payments in the amount of $\_\_\_\_\_each, payable (Monthly.) on the \_\_\_\_\_(day) of each \_\_\_\_\_ ( Month.), unless altered later by mutual agreement in writing.

— Or —

    A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

5

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement: Retail Installment Contract - Security Agreement

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement: **NONE**

SIGNATURE(S):

Borrower:

_Curtis Green_ (Print Name)
_Curtis Green_ (Signature)
Date: _08-05-2009_

Co-borrower, if also reaffirming these debts: _Martha Green_ (Print Name)
_Martha Green_ (Signature)
Date: _8-5-2009_

Accepted by creditor:
Vanderbilt Mortgage and Finance, Inc. (Printed Name of Creditor)

PO Box 9800 Maryville, TN 37802 (Address of Creditor)

_Richard Baker_ (Signature)
_Richard Baker_

(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance: _8/6/09_

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

↑[Check box, if applicable and the creditor is not a Credit Union.] A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: _Dale B. Dunn_

Signature of Debtor's Attorney: _____

Date: _8-5-09_

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ 1790.00, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ 929.18, leaving $ 860.82 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

(Use an additional page if needed for a full explanation)

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _Curtis Orr_
(Debtor)
_Martha Green_
(Joint Debtor, if any)
Date: _08-05-2009_

— Or —

[If the creditor is a Credit Union and the debtor is represented by an attorney]

2. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed:

_____
(Debtor)

_____
(Joint Debtor, if any)

Date: _____

## PART E: MOTION FOR COURT APPROVAL
[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]

## MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (check all applicable boxes):

> ⃞ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

> ⃞ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _____
       (Debtor)

_____
(Joint Debtor, if any)

Date: _____

7558-13

# CERTIFICATE OF TITLE
## STATE OF ARKANSAS

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|
| CLS105680TN | 2007 | CLAY | | MH |

| TITLE NUMBER | PREVIOUS TITLE NUMBER | PREV. TITLE STATE | ISSUE DATE | ODOMETER | UNLADEN WEIGHT |
|---|---|---|---|---|---|
| 999407F8453 | MSO | | 06/20/2007 | 0 | 28000 |

**MAILING ADDRESS**

VANDERBILT MORTGAGE & FIN INC
P O BOX 4007
MARYVILLE, TN 37802

**REMARKS**

**OWNER**

GREEN, CURTIS J
110 CLAYTON RD
TUCKERMAN    AR 72473-9134

OWNER'S SIGNATURE (IF JOINT OWNERSHIP, BOTH MUST SIGN)
THIS TITLE MUST BE SIGNED UPON RECEIPT BY OWNERS

**FIRST LIENHOLDER**

VANDERBILT MORTGAGE & FIN INC
P O BOX 4007
MARYVILLE    TN 37802
DATE OF LIEN  05/25/2007

**FIRST RELEASE**

INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED

NAME

TITLE          DATE

01063526

The Department of Finance and Administration, State of Arkansas, hereby certifies that the applicant named hereon is duly registered as the owner of the vehicle described above. From the statements of the owner and the records on file with this department, the hereon described vehicle is subject to the liens enumerated hereon.

In Witness Whereof, I have affixed my hand and seal.

*Timothy J. Leathers*
COMMISSIONER OF REVENUE

VOID IF ALTERED

 

Date 5-25-07

#7558    **RETAIL INSTALLMENT CONTRACT-SECURITY AGREEMENT**    CONV [X]  FHA [ ]  VA [ ]

| ASSIGNEE: Vanderbilt Mortgage and Finance, Inc. | Post Office Box 9800 | Maryville, | TN | 37802 |

Buyer's Name: **CURTIS J GREEN**    Co-Signer's Name:
Buyer's Name:    Co-Signer's Name:
Buyer's Address: **110 CLAYTON RD, TUCKERMAN, AR 72473**

"Buyer" refers to all persons who sign this contract as buyer or co-buyer, jointly and severally. "Seller" refers to the seller. The Seller will submit this contract to Vanderbilt Mortgage and Finance, Inc., P.O. Box 9800, Maryville, Tennessee 37802; and, if approved, the contract will be assigned to Vanderbilt Mortgage and Finance, Inc. Buyer promises to advise Seller in writing of any change of Buyer's mailing address while this contract is in effect. Seller should send any papers or notices concerning the Manufactured Home purchased under this contract to Buyer's mailing address. On the date of this contract, Buyer buys from Seller on a credit sale basis the Manufactured Home described below, together with furnishings, equipment, appliances and accessories included in the Manufactured Home at the time of purchase (collectively called "Manufactured Home").

**PROMISE TO PAY:** Buyer promises to pay Seller the "Unpaid Balance" as listed under "Itemization of Amount Financed" below plus interest from the contract date at the rate of 11.65% ("Contract Rate"). The "Unpaid Balance" includes any Prepaid Finance Charges advanced for Buyer. Prepaid Finance Charges, if any, shall be deemed fully earned by Seller when Buyer executes this Note. Buyer will pay the loan by making monthly payments in the amount(s) and on the dates listed in the Payment Schedule shown below. Buyer understands that the amount of the regular payment is based upon the assumption that all payments will be made on the scheduled due dates and in the scheduled amounts. If no Contract Rate is disclosed above, the initial interest rate is the Annual Percentage Rate shown below. The finance charge is figured on the assumption that Buyer will make each payment exactly as scheduled. (Buyers payment schedule).

**Description of Manufactured Home**    New [X]  Used [ ]

| TRADE NAME: CMH | | ADDITIONAL ACCESSORIES AND FURNISHINGS: ITEM AND SERIAL # | |
|---|---|---|---|
| MODEL: CELEBRATIO | YEAR: | Air CWH2053007 | Dish AM711552B |
| LENGTH: | WIDTH: | tum E3E061204636 | microwave GL9T19074 |
| SERIAL NO: CLS10568UTN | | stove AM2079570 | waterheater RH08062203B |
| SERIAL NO: | | refrig SL214794 | washer WR5217 dryer DY-62138 |

| ANNUAL PERCENTAGE RATE<br>The cost of Buyer's credit as a yearly rate: | FINANCE CHARGE<br>The dollar amount the credit will cost Buyer: | Amount Financed<br>The amount of credit provided to Buyer or on Buyer's behalf: | Total of Payments<br>The amount Buyer will have paid after Buyer has made all payments as scheduled: | Total Sale Price<br>The total cost of Buyer's purchase on credit including Buyer's down payment of $2,500.00 |
|---|---|---|---|---|
| 12.57 % | $79,732.23 | $45,840.57 | $125,572.80 | $128,072.80 |

Buyer's payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | $523.22 | Monthly, beginning, 8/01/2007 |
| | | Monthly, beginning, |
| | | Monthly, beginning, |
| | | Monthly, beginning, |

**Security:** Buyer gives Seller a security interest in:
[X] The goods or property being purchased including the Manufactured Home as described above.
[ ] Real property located at:

**Late Charge:** If a payment is more than 15 days late, Buyer will be charged 5% of the unpaid amount of such payment, not to exceed $5.00.

**Rebate for Prepayment:** At any time, Buyer has the right without penalty to pay this contract in full or to pay more than Buyers schedule requires. Buyer earns the Prepaid Finance Charge when Buyer receives the Home and no part of it will be refunded if Buyer pays in full ahead of schedule.

**Assumption:** Someone buying the Manufactured Home may be allowed to assume the remainder of Buyer's obligations under this contract on the original terms only if such person is approved by Seller.

See "Additional Terms and Conditions" on reverse side for additional information about nonpayment, default, required payment in full before the scheduled date and prepayment refunds and penalties.



 

| ITEMIZATION OF AMOUNT FINANCED: | |
|---|---|
| 1. Cash Price (Including Sales Tax of $1,749.82) .... | $47,779.82 |
| Cash Downpayment.......... $2,500.00 | |
| Trade-in (Year, Make, Model) N/A | |
| Length N/A  Width N/A | |
| Trade Allowance N/A  Liens N/A | |
| Net Trade-in Allowance  N/A | |
| 2. Total Downpayment .................................... | $2,500.00 |
| 3. Unpaid Balance of Cash Price (1 minus 2) ..... | $45,279.82 |
| 4. Amounts paid to others on Buyer's behalf | |
| a. To Insurance Companies | |
| (1) Property Insurance .... | $528.00** |
| (2) Credit Life Insurance ............... | $.00 ** |
| b. To Public Officials | |
| (1) Certificate of Title ................... | $32.75 |
| (2) Filing Fees .............................. | $.00 |
| c. To ............................... | $.00** |
| d. To ............................... | $.00** |
| e. To ............................... | $.00** |
| f. To ............................... | $.00** |
| g. To ............................... | $.00** |
| h. To ............................... | $.00** |
| i. To ............................... | $.00** |
| j. To ............................... | $.00** |
| k. To ............................... | $.00** |
| l. To ............................... | $.00** |
| m. To ............................... | $.00** |
| n. To DISCOUNT POINTS ........... | $2,750.43** |
| Total (items a. through n.) ............................ | $3,311.18 |
| 5. Unpaid Balance (3 plus 4) ........................... | $48,591.00 |
| 6. Prepaid Finance Charges ............................. | $2,750.43 |
| 7. Amount Financed (5 minus 6) ..................... | $45,840.57 |
| **Seller may retain, or receive, a portion of these amounts | |

**INSURANCE:**

PROPERTY INSURANCE ON THE MANUFACTURED HOME IS REQUIRED FOR THE TERM OF THIS CONTRACT. BUYER HAS THE RIGHT TO OBTAIN SUCH INSURANCE FROM ANYONE AUTHORIZED BY LAW TO SELL IT.

However, by checking the appropriate box below, Buyer elects to buy through Seller property insurance of the specified coverage, term and premium.

| Type of Insurance | Term | Premium |
|---|---|---|
| ☐ | | |
| ☐ | | |

OPTIONAL HOME BUYER PROTECTION PLAN (HBPP): Buyer protection and service plans are voluntary and are not required to obtain credit. If the box is checked, Buyer has elected to purchase HBPP at the terms shown below.

| Type of Insurance | Term | Premium |
|---|---|---|
| ☐ | | |

CREDIT LIFE INSURANCE IS NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS BUYER SIGNS AND AGREES TO PAY THE ADDITIONAL COST.

| Type of Coverage | Term | Premium |
|---|---|---|
| ☐ | | |

This insurance may not pay off all Buyer's debt and the exact amount of coverage is shown on Buyer's policy or certificate. If Buyer elects credit insurance, the name(s) of the proposed insured(s) are:
(Only One Buyer (not Co-Signer) may be insured.)

Proposed Insured:                                       Age:
Buyer's signature indicates Buyer's election to obtain the above marked insurance coverage(s) for the term, premium and proposed insured(s) shown.
Signature_____ Date_____
Signature_____ Date_____
Signature_____ Date_____
Signature_____ Date_____

**SECURITY INTEREST:** Buyer gives Seller a security interest under the applicable certificate of title law and the applicable Uniform Commercial Code in the Manufactured Home and any property added or attached to it, and if indicated above the real property as described, to secure Buyers obligation under this Contract. If this loan is also secured by a Deed of Trust or Mortgage on my real property, then this security agreement is not exclusive. If, and to the extent permitted by applicable law, Buyer agrees that Seller or its assignee may charge and collect from Borrower a reasonable fee for preparing documents related to this transaction, such as applications for certificates of title, financing statements, mortgages and deeds of trust, as well as any amendments to or terminations of any security interests created by any of the foregoing. All rights and remedies under this Note and any Deed of Trust executed herewith are cumulative, but Buyer's right to a written notice of default and 30 days to cure shall not be affected by any inconsistent provision of any Deed of Trust. Buyer also assigns directly to Seller any interest Buyer may have in premium refunds or proceeds under any insurance covering the Manufactured Home. Buyer agrees to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect Sellers security interest in the Manufactured Home. Buyer authorizes Seller to sign Buyer's name to any financing statement or application or other document which may necessary to perfect the security granted by Buyer herein.

**BUYER'S RIGHT TO PREPAY:** BUYER MAY PREPAY ANY AMOUNTS DUE UNDER THIS CONTRACT AT ANY TIME WITHOUT PENALTY. However, pre-paid finance charges (loan fees, points, finders fees or similar charges), if any, will not be refundable. Buyer has the right to make payments at any time before they are due. Unless Buyer directs Seller otherwise in writing, Seller will apply Buyer's prepayments to reduce the next scheduled payment or payments that Buyer owes under this contract. A partial prepayment will not change the due date or monthly payment amounts.

**PROPERTY INSURANCE:** Buyer is required to insure the Manufactured Home against physical damage for the term of the contract at Buyer's expense, subject to Sellers approval. If Buyer purchased and financed the premium(s), the premium is financed over the term of the loan, even though the term of insurance is less than the loan term. The amount of coverage must provide the types and amounts required by Seller. The insurance policy will contain a loss payable clause protecting Seller (as Seller's interest may appear), and provide for at least a 10 day notice of cancellation to Seller. Buyer agrees to provide written proof of such coverage to Seller at Seller's request within 5 days notice. **Buyer has the right to choose the person through whom the property insurance is obtained.** If Buyer's insurance coverage expires or is canceled prior to payment in full of this contract, Buyer must obtain no less than the minimum coverage at Buyer's expense for the remaining term of the contract. Should Buyer fail to maintain coverage or fail to provide proof of such insurance, Seller may, but is not obligated to, at Seller's sole discretion, obtain coverage in an amount and type it deems necessary. Buyer agrees that such coverage may cover Seller's interest and Buyer's interest or only Seller's interest. Seller may, at its sole option, insure against losses in amounts equal to the unpaid balance due on the note. Buyer understands the insurance premiums may be higher if Seller purchases the insurance than might be the case if Buyer had purchased the insurance. Seller may purchase the insurance from an affiliated company which may receive a profit for this service. Seller has no obligation to Buyer to search for any lower cost premiums that may be available to Buyer by other insurance companies.

**ADVANCES TO PROTECT THE MANUFACTURED HOME:** If Buyer fails to pay for required insurance, if Buyer fails to pay park or lot rent (and

 

any other related charges), if Buyer fails to satisfy taxes, assessments, or other liens or encumbrances against the Manufactured Home. If Buyer fails to keep the Manufactured Home in good repair or if Buyer fails to make any other payments required by this contract or applicable law, Seller may (but is not required to) make such repairs or payments Seller chooses. Any and all of such payments made by Seller, and any amounts Seller pays to protect or enforce Seller's security interest, will be added to the amount Buyer owes Seller on this contract, and will be secured by the Manufactured Home. Buyer agrees to pay interest on these amounts at the Contract Rate provided for in this contract on any such amounts Buyer does not repay immediately. At Seller's sole option, Seller may (1) demand that Buyer repay these amounts immediately, or (2) add these amounts to Buyer's regularly scheduled payments, or (3) add these amounts as additional installments due or (4) add these amounts to the final installment due on this contract.

**DELINQUENCY AND DEFAULT:** Time is of the essence. If a payment is more than 15 days late, Buyer agrees to pay a late charge of 5% of the unpaid amount, not to exceed $5.00. If any check, negotiable instrument of withdrawal or share draft is dishonored and returned to Seller by Buyer's financial institution, Buyer will pay a processing fee of a maximum of $20.00 or the maximum amount permitted by law, whichever is less, in addition to being required to make payment on the item, and late charges. Buyer will be in default on this contract if: (1) Buyer fails to make any payment when due; or (2) otherwise fails to perform any of Buyer's obligations under this contract; or (3) Buyer dies or becomes legally unable to manage Buyer's affairs; or (4) any statement of fact, representation or warranty Buyer makes to Seller in Buyer's loan application, or in any loan document is false, misleading, inaccurate, or incomplete. In the event of Buyer's default, Seller will give Buyer notice of the right to cure the default ("Notice of Default") when required by law. Buyer is not, however, entitled to a Notice of Default more than twice in any one-year period. Under no circumstances is Buyer entitled to a Notice of Default if Buyer has either abandoned or voluntarily surrendered the Manufactured Home, or if other extreme circumstances occur. If Buyer has not cured the default within 30 days after the postmarked date of the notice, Seller may accelerate the maturity of the debt and require Buyer to pay Seller the entire remaining balance due on the contract. Seller may take legal action against Buyer, and Seller may repossess the Manufactured Home. In the event of default, Buyer also agrees to pay Seller's expenses for (a) reasonable attorney's fees, not to exceed 15% of Buyer's unpaid debt, after referral to an attorney who is not Seller's salaried employee; (b) court costs and disbursements; and (c) costs of repossessing the Manufactured Home including the costs of storing, reconditioning, and reselling it. Before Seller sells the Manufactured Home, Buyer can get it back (redeem) if Buyer (1) pays Seller amounts which are past due, including late charges; (2) pays Seller the cost of taking and storing the Manufactured Home and other expenses that Seller incurs; (3) pays Seller all other charges or other expenses to which Seller is entitled under this contract; and (4) cures any other defaults which may have occurred. Buyer's right to redeem will end when the Manufactured Home is sold unless otherwise required by law. Any personal property of Buyer's in or attached to the Manufactured Home which is not subject to Seller's security interest may be held by Seller without liability if the Manufactured Home is repossessed. Buyer will be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within ten (10) days after repossession.

**OTHER TERMS AND CONDITIONS:** Buyer will not move the Manufactured Home from the address above without Seller's prior written consent. Buyer will not sell the Manufactured Home without Seller's prior written consent. Buyer will not let the Manufactured Home become part of any real estate. Buyer agrees that the Manufactured Home sold by the terms of this contract is personal property. Unless Seller gives prior written consent, Buyer shall not allow the Manufactured Home to become a part of real estate or to otherwise lose its status as personal property under applicable law, and doing so shall constitute willful and malicious injury to the Manufactured Home and Seller's security interest herein. Buyer will not encumber or abandon the Manufactured Home or use it for hire or illegal activity, nor allow any lot lien, landlord lien, or similar lien to encumber the Manufactured Home. Buyer will pay promptly all taxes and any liens and encumbrances of the Manufactured Home. Buyer will notify Seller promptly of any loss or damage to, or confiscation or theft of the Manufactured Home. When Seller asks for it, Buyer promptly will provide Seller with proof that (1) Buyer has the insurance required under this contract; (2) all taxes assessed against the Manufactured Home have been paid; (3) all park or lot rent (and any other related charges) due has been paid; (4) Seller's lien is the only lien against the Manufactured Home, and (5) the Manufactured Home is in good condition and repair. Seller can inspect the Manufactured Home at any time. If Buyer is married, and residing in a community property state, both Buyer's community property and separate property will be liable for all payments under this contract. Buyer will cooperate with Seller regarding any requests after closing to correct errors made concerning this contract or the transaction and to provide any and all additional documentation deemed necessary by Seller to complete this transaction. Buyer acknowledges that Buyer has examined the Manufactured Home and that, if it is used, Buyer accepts the Manufactured Home as is. The year of the Manufactured Home as specified in this contract is for identification purposes only. Seller may rely on a telecopy or photocopy of this agreement as if it were an original. Buyer acknowledges that any Broker or other third party used to facilitate this transaction may receive compensation from Seller for its services. If the Home Buyer Protection Plan (HBPP) or Credit Life were purchased, the premium(s) are financed over the term of the loan, even though the term of insurance is less then the loan term.

**ARBITRATION:** All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.** The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, Seller retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by Seller pursuant to this provision.

**INFORMATION SHARING:** Seller may investigate Buyer's credit history and credit capacity in connection with opening, updating, modifying, extending, and/or collecting Buyer's account, and share information about Buyer and Buyer's account with credit reporting agencies. Seller may sell or otherwise furnish information about Buyer, including insurance information, to all others who may lawfully receive such information. Seller may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent to enable such agent to quote premiums to Buyer and solicit Buyer's insurance business. Seller may also verify Buyers employment, pay, assets, and debts; and anyone receiving a copy of this contract is hereby authorized to release such information to Seller.

 

**WAIVER AND MODIFICATION:** Seller's waiver of any default shall not constitute a waiver of any other default. The procurement of required property insurance, or the payment of taxes, or other liens, or other charges, by Seller shall not be a waiver of Seller's right to accelerate the maturity of this contract and declare a default herein.

**WARRANTIES:** Any warranties relating to a new Manufactured Home have been provided to Buyer by Seller, or a warranty company, or the manufacturer in a separate writing, receipt of which Buyer hereby acknowledges. Except as provided in such writing, if any, **there are no warranties, express or implied, including but not limited to warranties of merchantability or fitness for a particular purpose.** Buyer acknowledges that Buyer has examined the Manufactured Home and that, if it is used, Buyer accepts the Manufactured Home "as is". The year of the Manufactured Home is for identification purposes only. Except to the intent expressly stated herein, or as otherwise required by law, no assignee of this contract shall be liable, either in tort or contract, for any direct or indirect damages or for any special, incidental, or consequential damages arising out of or in connection with this contract or transaction. This disclaimer of warranties does not affect service contracts made with the Seller within 90 days from the date of this contract.

**VALIDITY:** Wherever possible each provision of this contract shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this contract shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this contract. The contract shall be governed both as to issues of formation and performance, by the laws of the State where the contract was executed by Buyer, provided that to the extent Federal preemption applies, Federal rights and remedies will be applied. This contract shall be of no effect until and unless signed by Buyer and Seller. In no event shall any charge under this contract exceed the highest amount allowed by applicable law. If any excess charge is received such excess shall be refunded or applied to the amount due.

**ASSIGNMENT:** Seller may assign this contract to any person or entity. All rights granted to Seller under this contract shall apply to any assignee of this contract.

**ENTIRE AGREEMENT:** This contract, any separate written warranty and the "Retailer Closing Agreement" constitute the entire agreement between Buyer and Seller. Buyer agrees that no representations, oral or written, have been made to Buyer to induce Buyer to enter into this contract, other than the representations expressly set forth in this contract and in any separate written warranty.

**GUARANTY:** Co-Signer agrees that all amounts owed under this contract will be paid when due. Co-Signer will still be obligated even if Buyer is released or if Seller waives or delays enforcement of any of Seller's rights under this contract. Seller does not have to give Co-Signer notice of any such waiver, delay or release. See attached Notice to Co-Signer before signing this guaranty.

 

NOTICE TO THE BUYER: 1. DO NOT SIGN THIS DOCUMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO AN EXACT COPY OF THE DOCUMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 3. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS MOBILOWNERS INSURANCE IS INDICATED IN THE PROPERTY INSURANCE BOX ABOVE. 4. CAUTION: YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT CONSISTING OF FIVE (5) PAGES.

**SELLERS AGREEMENT:** Seller agrees to this contract, and subject to acceptance by Vanderbilt Mortgage and Finance, Inc. at its designated office, assigns it to Vanderbilt Mortgage and Finance, Inc. in accordance with the assignment set forth herein. Notice of acceptance is hereby waived.

Seller  CLAYTON SEARCY

By _____ Mgr
    (Signature)        (Title)

Seller's Address  1100 EAST LINE RD
                  SEARCY, AR
                  (City)    (State)

Date of this Contract  5-25-2007

CmH Homes Inc,
Britney Woodworth/DC

**CAUTION** — IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_Curtis J Green_
(Buyer)                                    CURTIS J GREEN

5-25-07
(Date)

_____
(Buyer)

_____
(Date)

**GUARANTY OF BUYER'S PROMISES:** The undersigned, separately and together, agree(s) to pay all amounts due on this contract until all amounts due on this contract are paid in full. The undersigned also agree(s) to all the terms and conditions of this contract.

_____
(Co-Signer)

_____
(Date)

_____
(Co-Signer)

_____
(Date)

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR (BUYER) COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR (BUYER) SHALL NOT EXCEED AMOUNT PAID BY THE DEBTOR (BUYER) HEREUNDER.

(See above for Buyer's and Seller's Signatures)

**ASSIGNMENT BY SELLER**

TO VANDERBILT MORTGAGE AND FINANCE, INC. (VANDERBILT): For value received, Seller hereby assigns within contract and all Seller's right, title and interest in it, and its collateral to Vanderbilt Mortgage and Finance, Inc. (Assignee), together with certain warranties and recourse obligations, if any, contained in the underlying agreement between Seller and Vanderbilt.

VANDERBILT MORTGAGE AND FINANCE, INC. assigns _____

the foregoing contract including all amounts payable by buyer and the security interest in the collateral, without recourse.

Date_____ By:_____ Title:_____

AR Fixed - Rev 04/2000

7558

## VANDERBILT MORTGAGE AND FINANCE, INC.
P.O. BOX 9800, MARYVILLE, TN 37802 • (865) 380-3000 (800) 970-7250

### *INITIAL* ESCROW ACCOUNT DISCLOSURE STATEMENT

THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.

| Period | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit | | | | $.00 |
| 1 | $44.00 | | | $44.00 |
| 2 | $44.00 | | | $88.00 |
| 3 | $44.00 | | | $132.00 |
| 4 | $44.00 | | | $176.00 |
| 5 | $44.00 | | | $220.00 |
| 6 | $44.00 | | | $264.00 |
| 7 | $44.00 | | | $308.00 |
| 8 | $44.00 | | | $352.00 |
| 9 | $44.00 | | | $396.00 |
| 10 | $44.00 | | | $440.00 |
| 11 | $44.00 | | | $484.00 |
| 12 | $44.00 | $528.00 | Insurance | |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)

Cushion selected by servicer: $88.00

YOUR MONTHLY MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $567.22 OF WHICH $523.22 WILL BE FOR PRINCIPAL AND INTEREST AND $44.00 WILL GO INTO YOUR ESCROW ACCOUNT.

The escrow account continues during the life of the loan.

Dated 5-25-07

Witness: _____ Borrower: _____
(Signature of CURTIS J GREEN)

_____
(Signature of)

INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT - REV. 02/1999
Page 1

002227530-00009